I move to the final case this morning, the United States v. Zamudio. May it please the court, Brian Reitz for the United States. This court should reverse the district court. As much as it pains me to say it here, the district court got this one wrong. The court's suppression order... I've never seen you on that side of the courtroom before, Mr. Reitz. It is a unique posture for us to be in, but the district court suppression order here can't be squared with this court's precedence. This court has held at least 12 times over the last nearly 30 years that an issuing magistrate may infer reasonably that evidence of drug dealing is likely to be found at a drug dealer's residence. The district court, however, here suppressed evidence because, essentially, there was no nexus between Juan Zamudio's drug dealing and his residence. That must be... Before you dig into the details, Mr. Reitz, could you tell us about the status of the larger case? I assume there are lots and lots of defendants, and what's going on in the district court? Adrian Bennett was scheduled for trial, I think, two weeks ago and pleaded guilty the morning of trial. I believe this is the last remaining defendant. Did his brother plead guilty? Did Mr. Zamudio's brother plead guilty? I believe so, but I'm sorry. I should know that by then. Well, even if we skip the first issue, the question is whether there's reason to believe, not to contest what the magistrate had said, that there was good faith belief in it. Right. I think good faith is clear. Now, admittedly, the government failed to raise that below, which was an oversight. We think there was reasonable suspicion, but that being said, yes, we think there was definitely good faith to rely on this. This court has upheld warrants of substantially similar grounds before. So that brings up the problem of the government invoking plain error review, and it's something we've kind of dabbled with but haven't done very often. It clearly would need to be rare. What's special about this case, from your point of view, that makes this appropriate for us to exercise that discretionary power, if we get there? Of course, we understand that it should be rare. This is not something we normally are here saying. The reason this is rare, I think probably this is the highest interest the government could have. We stand in the shoes in these situations of the public interest, and the public always has an interest in seeing people that are guilty be punished or at least held to trial for crimes that they are alleged to have committed. Here we have a scenario that I think would clearly fall under good faith if the government had raised it. So if without... Is timing an issue here? Yes. You know, I hate to stand here and make excuses, but the government was in the midst of trial prep for a multi-defendant trial with multiple witnesses. And when the defendant filed this motion to suppress after the deadline, we filed to... We objected to that on timeliness grounds, and the district court ordered us to respond and gave it six days right before trial. So, yes, I think that played a factor. Again, I... You know, the government certainly... We understand we have resources, and we hate to make too many excuses, but that did play a factor in why we overlooked that. Have you found any cases where the court found plain error, where the district court found the good faith exception inapplicable? I have not, Your Honor. It probably doesn't come up that often. No, I think, first of all, because the government usually raises good faith. It's sort of textbook advocacy on the government's part. We missed it. But I think that would be a higher interest for applying plain error to the government than Jones and Jackson discussed with a sentencing error. I know Chief Judge Wood, when she dissented, again stated that it should be ran. She wasn't sure if it should apply, but she proposed a hypothetical where a guidelines was significantly departed from maybe what a defendant should have received. And I think this exceeds those bounds quite a bit, because this is about whether... Not whether a defendant is sentenced in or within guidelines, but whether a defendant can actually be punished for a crime that he appears to have committed and at least stand trial on that point. This seems to be the perfect reason why good faith exists, because really twice over, not only did the officers rely on a good faith, but this would be the constable blundering and allowing a defendant to not be held accountable for his action. Mr. Wrights, could you address the errors or apparent confusion of Juan and Jose Zamudio in the affidavit? I guess this is the second thing the government has to apologize for, certainly, that we transposed the names in a couple places. This was a lengthy affidavit. The names are similar for letters, start with a J. We don't think in any one of those it was misleading in any relevant way. In other words, it didn't really heighten anyone's responsibility. Like the sentence where the defendant points to and the court pointed to where Juan was talking to himself, if you read it as is, Juan is talking to himself. It doesn't really increase his culpability, because we know he's there in that conversation. Focusing a little more on the general rule to the extent there is one here, at least my understanding is we have shied away from endorsing a per se rule that, in essence, you've always got probable cause to search a residence. Yet, reading our case law, it seems to come pretty close to that. Can you hypothesize a case in which probable cause to believe someone is a drug trafficker would not authorize, on a reasonable basis, a search of their residence? Let me preface by saying we don't dispute that it shouldn't be a categorical rule, but we do think it will be rare, because in most instances, you will have indicia of your employment at your home. We think that is an inherently reasonable inference to make. This court has hypothesized a safe house. I suppose you could envision a very, very tightly centrally controlled drug conspiracy where the kingpin of it made everybody keep all of their instrumentalities, not just the drugs, but the indicia of drug dealing in a safe house. I think that is probably unlikely to occur in the real world, but it could. So I think leaving that exemption available is reasonable. I would also say, too, in the categorical rule, because there is no rule that the magistrate has to find this, the magistrate is allowed to reject that inference. So a reviewing court looking upon it, once the magistrate makes that inference, I think it's going to be difficult to refute that, but there maybe could be a situation where everything is very centralized. And in drug prosecutions, is it correct that financial evidence related to the defendant's assets and income history is very often relevant? Yes, especially the unexplained wealth is going to be very relevant. Mr. Zamudio here was charged with money laundering, so that was going to be relevant, too. And really, there is certainly nothing in the record to support a presumption that Jose Zamudio would have stored Juan Zamudio's financial records, his cash, his cell phone, all those other instrumentalities in Jose Zamudio's home. Even if there was an inference that a centralized or the leader of this drug dealing organization would have kept all the drugs in his home, which we don't think that's true either, but even if that was, certainly there's nothing to say that everything, every piece of evidence for Juan Zamudio would have been found in Jose Zamudio's house. And of course, post hoc rationalizations don't really get us there in the Fourth Amendment, but in fact, those indicia of drug dealing were found in Juan Zamudio's home. The court has no further questions. I'll reserve the balance of my time for rebuttal. Thank you. Thank you, Counselor. Good afternoon, Your Honors. Mr. Itts. May it please the court, my name is John Tennyson. I stand for Juan Zamudio. This case is about whether this court should effectively adopt a categorical rule upholding of finding a probable cause to any location simply because a drug dealer lived there. And I think the court's question to Mr. Itts, I think the court's question to the government about a hypothetical where just because a drug dealer lives somewhere would not lead to probable cause is this case. And in all of the other examples that come out of this court, there is either something else or not allegations which would lead a reasonably prudent person to think that the drugs were stored elsewhere. Do you agree that the affidavit was sufficient to indicate probable cause that Juan Zamudio was engaged in the trafficking operation? Yes, Your Honor. Okay. So I agree with you. But given the types of evidence that are relevant to drug trafficking prosecutions, including, for example, financial records, absence of or rather unexplained wealth and income and so on, why isn't it pretty reasonable for the magistrate to agree with law enforcement that there's probable cause to search his home and see what those financial records look like? I think in most cases there would be. This case, though, the facts are very particular and I think indicate otherwise. Meaning at the time the warrant was issued, Juan was not, there was nothing in the warrant alleging any sort of activity with money laundering. So I think we need to look with what the warrant says about Juan's involvement with drug trafficking. There were three instances in the warrant where it mentions or connects Mr. Zamudio with drug trafficking. And they all have to do with a connection to Jose Zamudio and Jose Zamudio's house. In the first one, Juan and two other co-defendants went to Jose Zamudio's house, left and met another co-defendant, and he was later picked up for a traffic violation or pulled over for a traffic violation and they found 852 grams or so of methamphetamine. In the second one, Juan and co-defendants were being surveilled and someone got inside Juan's car and then left with a basketball sized package. Again, no relation to Juan's house and I think it does back up our argument that all of the ties put this towards Jose's house, which makes this closer to the Walker case. And in the third, Juan evidently answers Jose's phone and tells someone to come pick up drugs at Jose's house. I think this is not the Walker case where the only thing was, and this is how we distinguish this case, I think, your honors. This is not the Walker case where the only thing looked at was the officer's training and experience at drug dealers keep paraphernalia at their homes. This has those other things that would point to reasonably prudent person elsewhere. How do you make that argument, though, when this court has said that the probable cause does not require direct evidence linking a crime to a particular place? That was said in Orozco and Anderson. Yes. However, I think when you look at those cases, they all had something else as well. Orozco was the second in command of a large gang and there were people speaking about him and telling on him that they had bought drugs from him. And also, it wasn't just the same probable cause statement. I think in Orozco, it was along the lines of, you know, based upon a decade of experience in narcotics, there will be evidence found at a high-ranking gang member's house. Well, the agent here said, based on my training and experience, I am aware that drug traffickers generally store their drug-related paraphernalia in their residences and further, that they maintain records relating to their drug-trafficking activities in their residences. How does that differ from the language in Orozco? Orozco wasn't generally or... Orozco said often. Right. It said very likely. Those are okay. Okay. Generally here. Not uncommon was the Sixth Circuit language. Yes. Is that the way we want to parse this? And by the way, is that the way officers need to parse it after a magistrate judge has issued the warrant? No, Your Honor. And I think this court has already decided cases in line with what we're asking this court to decide today. The Wiley case does specifically note that it's inappropriate to adopt a categorical rule. And I think the Walker case, which was close, and if I remember correctly, in the Walker case, it was language very similar to the probable cause statement that we're dealing with here. And the Walker case, it stated that it was close to the line, and I think this is past the line. Now, there are hypotheticals in the Walker case, such as some sort of indication that the dealer uses a safe house or some sort of indication that all of the drug-related activity is being done in a certain place. And I don't think that hypothetical pushes it barely past the line. I think, Your Honors, that that would be an example of something that clearly would be past the line. And we would argue that in Mr. Zamudio's case, he is past that line, maybe not as far as assertions that they used a safe house or that all of the drug-related activity took place somewhere, though I think the facts alleged in the search warrant and the probable cause statement are sufficient to warrant a man of reasonable prudence to believe the evidence would not be found at Juan Zamudio's house because all of his trafficking activities are tied to his brother, Jose. But the affidavit also reversed that Juan Zamudio aids Jose Zamudio and works closely with him in trafficking drugs. Why isn't that enough, along with the probable cause that you've conceded, that Juan Zamudio was engaging in narcotics trafficking and the agent's final averments that, based on his training and experience, drugs and tools of the trade are generally kept in the home? Yes, Your Honor. And I think it would be without these specific allegations against Juan on what he was doing when he was being surveilled. The problem with that is the more nuanced and subtle and narrow your argument is, the harder it is to avoid a good faith under Leon. Right? So how do you? Yes, Your Honor. Well, I mean, on good faith, would you like me to address the probable cause aspect of your question first or the good faith aspect? Take your pick. Okay. Well, the good faith one, I think, should be easier for this court to decide because I think it is, but not for you. Because the government didn't raise it in the district court level. Were you counsel at the trial level? Yes, I came in relatively late to this case. I did file the suppression motion, Your Honor. Okay. So you asked the district judge to overlook the prior deadlines, right? I did. Okay. And the judge did that. And so the government is under this pretty extraordinary time pressure on the eve of trial, right? They were, Your Honor. So why should we not cut them a little slack just as the district judge cut you some very important slack to allow you to file the motion at all? Because they didn't later try to amend their filing with some sort of good cause showing on why it was late. Whereas with our filing, we had to explain, Your Honor, why there would be good cause. And I don't even know if we did that with our initial filing or had to supplement it. I can't remember right offhand. But we did make such a supplementation. There's some language I want to quote you in a case. United States v. Jones has said, there may be, that was our case in 2013, there may be a few compelling cases in which an appellate court should exercise its oversight to consider arguments forfeited by the government. In extreme cases, that clearly implicates miscarriages of justice that insult the public interest. Well, Your Honors, I wouldn't really see how keeping this evidence suppressed would be an assault on justice. One, Mr. Zamudio was charged with four crimes. Two, the evidence actually taken from his home, you know, there is enough in the affidavit, through wiretaps, through other people who have pled and who could testify, that they would be able to prove some of these other charges without the evidence recovered from the search of Juan Zamudio's garage. The law says that the district court is supposed to give great deference to the magistrate judge's determinations on probable cause. How did the district court do that in parsing through the particular language in the affidavit? Your Honor, I think Judge Pratt gave great deference to the magistrate. However, I think the district court saw that because of these affirmative allegations in the warrant that completely point away from Juan Zamudio's home, that it fell in closer with the Walker case, that this is past the line. This isn't something that's a close call. That this is an example that this court was thinking of when they went through the Wiley and Walker opinions. Thank you. All right. And we would ask that this court affirm the district court's ruling on our motion to suppress. Thank you, Your Honor. Thank you very much. I have just two points on rebuttal. First of all, while it's true that Jose Zamudio was the ringleader, we would point the court, this is all cited on our brief on page six in our opening brief, Jeremy Perdue had drugs at his home and both Daniel Albertson and his daughter did. So even within the warrant, just because Jose Zamudio was the ringleader of this, it did not exclude other people from having drugs at their home, much less indicia of drug dealing. The second point on plain error, why we didn't supplement, the suppression was granted five days before trial. Two of those days were the weekend, Saturday and Sunday. So it was pretty much now or never for us whether we were going to file a notice of appeal and stop the trial and stop the witnesses and everybody coming in. And that's why we went straight to this court. With that, we would ask this court to reverse the district court. Thank you. Thanks. Thanks to both counsel on the cases taken under advisement. And the court will be in recess.